**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JULIE CONTRERAS, IRVIN FUENTES, ABRAHAM MARTINEZ, IRENE PADILLA, and ROSE TORRES<br><br>                             Plaintiffs,<br><br>v.<br><br>ILLINOIS STATE BOARD OF ELECTIONS, CHARLES W. SCHOLZ, IAN K. LINNABARY, WILLIAM J. CADIGAN, LAURA K. DONAHUE, WILLIAM R. HAINE, WILLIAM M. MCGUFFAGE, KATHERINE S. O'BRIEN, and CASANDRA B. WATSON in their official capacities as members of the Illinois State Board of Elections, DON HARMON, in his official capacity as President of the Illinois Senate, and THE OFFICE OF THE PRESIDENT OF THE ILLINOIS SENATE, EMANUEL CHRISTOPHER WELCH, in his official capacity as Speaker of the Illinois House of Representatives, and the OFFICE OF THE SPEAKER OF THE ILLINOIS HOUSE OF REPRESENTATIVES,<br><br>                          Defendants. | Case No. 1:21-cv-3139 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.      This action seeks declaratory and injunctive relief on behalf of Plaintiffs Lisbeth Aviles, Julie Contreras, Irvin Fuentes, Lisette Lopez, Abraham Martinez, and Irene Padilla to secure the right to vote as protected by the Fourteenth Amendment to the United States Constitution.

2.      Plaintiffs seek a declaratory judgment that the current legislative redistricting plans (the "Enacted Plans") for election of representatives and senators to the Illinois General

1

Assembly (the "General Assembly"), which were passed on May 28, 2021 and signed into law by Illinois Governor J.B. Pritzker on June 4, 2021, are malapportioned. Plaintiffs seek preliminary and permanent injunctions prohibiting the calling, holding, or certifying of any future election using the Enacted Plans. Plaintiffs seek the creation of representative and legislative plans that are equally apportioned as measured by the 2020 Census redistricting data contained in the Public Law 94-171 ("P.L. 94-171") file being issued by the U.S. Census Bureau (the "Bureau").

3. The General Assembly used data from the American Community Survey (the "ACS") five-year estimates for 2015-2019 and "other election data" to draw the boundaries for the districts used to elect members of the General Assembly. The Enacted Plans purportedly ensure compliance with the "one-person, one-vote" standard mandated by the Fourteenth Amendment; however, ACS data is inadequate for that purpose.

4. Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, state legislative districts are required to be of substantially equal population. This requirement is encompassed in the "one-person, one-vote" standard. Under this standard, states must create legislative districts that are substantially equal in population, and the states are responsible for regularly reapportioning these districts to ensure constitutional compliance.

5. Plaintiffs seek a declaratory judgment that the Enacted Plans violate the Fourteenth Amendment to the United States Constitution, and an order enjoining the implementation of the Enacted Plans unless and until they are shown to contain equally apportioned districts as measured by the P.L. 94-171 data.

## II.    JURISDICTION AND VENUE

6.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiffs' claim, which arises under the laws of the Constitution of the United States.  This Court has original jurisdiction over Plaintiffs' request for declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

8.      This action challenges the constitutionality of the apportionment of the General Assembly.  Accordingly, "[a] district court of three judges shall be convened. . . ."  28 U.S.C. § 2284(a).

## III.    PARTIES

9.      Plaintiff Julie Contreras is a registered voter of Latina heritage residing within Representative District 60 under the Enacted Plans.

10.      Plaintiff Irvin Fuentes is a registered voter of Latino heritage residing within Representative District 1 under the Enacted Plans.

11.      Plaintiff Abraham Martinez is a registered voter of Latino heritage residing within Representative District 86 under the Enacted Plans.

12.      Plaintiff Irene Padilla is a registered voter of Latina heritage residing within Representative District 6 under the Enacted Plans.

13.      Plaintiff Rose Torres is a registered voter of Latina heritage residing within Representative District 6 under the Enacted Plans.

14.     Defendant Illinois State Board of Elections supervises the administration of registration and election laws throughout Illinois under Article III, Section 5 of the Illinois Constitution and 10 ILCS 5/1A-1, *et seq*.

15.     Defendant Charles W. Scholz is the Chair of the Illinois State Board of Elections and is sued in his official capacity.

16.     Defendant Ian K. Linnabary is the Vice Chair of the Illinois State Board of Elections and is sued in his official capacity.

17.     Defendant William J. Cadigan is a member of the Illinois State Board of Elections and is sued in his official capacity.

18.     Defendant Laura K. Donahue is a member of the Illinois State Board of Elections and is sued in her official capacity.

19.     Defendant William R. Haine is a member of the Illinois State Board of Elections and is sued in his official capacity.

20.     Defendant William M. McGuffage is a member of the Illinois State Board of Elections and is sued in his official capacity.

21.     Defendant Katherine S. O'Brien is a member of the Illinois State Board of Elections and is sued in her official capacity.

22.     Defendant Casandra B. Watson is a member of the Illinois State Board of Elections and is sued in her official capacity.

23.     Defendant Don Harmon is a member of the General Assembly and is sued in his official capacity as President of the Illinois Senate.

24.     Defendant the Office of the President of the Illinois Senate is the office of the presiding officer of the Illinois Senate, as designated by Article IV, Section 6(b) of the Illinois Constitution.

25.     Defendant Emanuel Christopher Welch is a member of the General Assembly and is sued in his official capacity as Speaker of the Illinois House of Representatives.

26.     Defendant the Office of the Speaker of the Illinois House of Representatives is the office of the presiding officer of the Illinois House of Representatives, as designated by Article IV, Section 6(b) of the Illinois Constitution.

## IV. FACTS

### P.L. 94-171 Redistricting Data

27.     The United States Constitution requires an "actual Enumeration" of every person living in the United States to take place every ten years.  U.S. CONST. art. I, § 2.

28.     The decennial count of the national population is used to allocate seats in the United States House of Representatives to states based on the "whole number of persons in each State."  U.S. CONST. amend. XIV, § 2.

29.     P.L. 94-171, enacted in 1975, "directs the Census Bureau to make special preparations to provide redistricting data needed by the fifty states.  Within a year following Census Day, the Census Bureau must send the data agreed upon to redraw districts for the state legislature to each state's governor and majority and minority legislative leaders."  The P.L. 94-171 redistricting data provides the decennial count data by small area geography and includes tabulations by major racial/ethnic groups.

30.     Following the release of the P.L. 94-171 redistricting data, states use the data to draw district lines that comply with the one-person, one-vote standard.

31.     In order to comply with the one-person, one-vote standard, the General Assembly's representative and legislative districts must be "substantially equal in population." Historically and traditionally, P.L. 94-171 data has been used for purposes of determining whether representative and legislative districts are in compliance with the one-person, one-vote standard.

32.     However, on April 13, 2020, the Bureau announced a new Census timeline that accounted for delays created by the COVID-19 pandemic (the "COVID-19 Plan"), among other reasons. The new timeline included postponed dates for collecting and processing data.

33.     On February 12, 2021, because of these delayed processing dates, the Bureau announced that "it will deliver the Public Law 94-171 redistricting data to all states by Sept. 30, 2021. COVID-19-related delays and prioritizing the delivery of the apportionment results delayed the Census Bureau's original plan to deliver the redistricting data to the states by March 31, 2021." Press Release, U.S. Census Bureau, Census Bureau Statement on Redistricting Timeline (Feb. 12, 2021) (available at https://www.census.gov/newsroom/press-releases/2021/statement-redistricting-data-timeline.html) (last visited June 10, 2021).

34.     Although the Bureau will release redistricting data in final form on September 30, 2021, "[s]tates, as well as the public, will receive the data they need to begin redistricting by August 16." U.S. Census Bureau, 2020 Census Updates (June 8, 2021) (available at https://www.census.gov/programs-surveys/decennial-census/decade/2020/2020-census-main.html) (last visited June 10, 2021).

**The Inadequacy of ACS Estimates for Redistricting Purposes**

**1. The ACS is a Survey and Does not Enumerate the Population**

35.      P.L. 94-171 data and ACS estimates have different purposes and different collection methodologies.  P.L. 94-171 data is based on the decennial census's actual enumeration of the population.  The ACS is an ongoing, yearly, sample survey by the Bureau that collects detailed demographic information including ancestry, citizenship, educational attainment, income, language proficiency, migration, disability, employment, and housing characteristics from approximately 2.5 percent of U.S. households.  ACS data are an estimate of population characteristics based on sample data, and not a count of U.S. citizens and non-U.S. citizens.

36.      ACS data are not used to determine whether voting districts are equipopulous and comply with the one-person, one-vote constitutional requirement. Rather, "in the overwhelming majority of cases, jurisdictions have equalized total population, as measured by the decennial census" total population enumeration.  *Evenwel v. Abbott*, 136 S. Ct. 1120, 1125 (2016).

37.      ACS data are not available for census blocks, the smallest geographical units used in redistricting.  Rather, ACS estimates are available only at the "block group" level.  Block groups typically contain between 600 and 3,000 people.[1]  Although the ACS is designed to provide reliable estimates using one year of data for areas with populations over 65,000, which includes all states and many counties, multiple years of data must be aggregated in order to obtain data for smaller areas, such as block groups.  The ACS does not produce data for census blocks because the populations in question are too small to estimate accurately.  Only an enumeration can measure the population of census blocks.

---

[1] *See* United States Census Bureau, Glossary, https://www.census.gov/programs-surveys/geography/about/glossary.html [https://perma.cc/A8JT-Y8Z8 ] (last visited on May 6, 2021).

## 2. ACS Data is not Current for Redistricting Purposes

38.    ACS data are released in one-year and five-year estimates.  One-year estimates are available for populations of at least 65,000.  The Bureau combines five consecutive years of ACS data to produce multiyear estimates for geographic areas with fewer than 65,000 residents.

39.    Because one-year estimates are not suitable for populations under 65,000, redistricting maps drawn with ACS data, such as the Enacted Plans, require the use of five-year estimates.

40.    Five-year ACS estimates are not current for purposes of determining whether districts comply with the one-person, one-vote standard.  Eighty percent of the data from the 2015-2019 ACS five-year survey was between two and five years old by Census Day, April 1, 2020.

41.    P.L. 94-171 actual enumeration data captures a snapshot in time (i.e., the population on April 1, 2020).

## **Redistricting Deadlines Under the Illinois Constitution**

42.    The Illinois Constitution provides deadlines for the 2021 redistricting cycle.  ILL. CONST. art. IV, § 3(b).  If a new legislative redistricting map is not passed by the General Assembly and signed into law by the governor before June 30 in the year following the decennial census, the task of redistricting falls to a Legislative Redistricting Commission (the "Redistricting Commission") to be created on or before July 10.  *Id.*  The Redistricting Commission must consist of eight members, no more than four of whom can be members of the same political party.  *Id.*  On or before August 10, the Redistricting Commission must file a redistricting plan that at least five members have approved with the Illinois Secretary of State. *Id.*  If the Redistricting Commission fails to file a plan on or before August 10, the Supreme

Court must submit the names of two persons, not of the same political party, to the Secretary of State on or before September 1. *Id.*

43.     On or before September 5, the Secretary of State must publicly and randomly choose the name of one of the two persons nominated by the Illinois Supreme Court to serve as the ninth member of the Redistricting Commission. ILL. CONST. art. IV, § 3(b). On or before October 5, the newly constituted commission must file a redistricting plan with the Secretary of State. A plan so chosen will have the force and effect of law. *Id.*

### The 2021 Redistricting Process in Illinois

44.     On March 17, 2021, the General Assembly began holding virtual hearings to solicit public feedback on the redistricting process in Illinois.

45.     On May 21, 2021, the General Assembly proposed draft representative and legislative redistricting maps. On May 25, 2021, and May 26, 2021, the Illinois House and Senate held virtual hearings to solicit feedback on the proposed redistricting maps.

46.     On Thursday May 27, 2021, House and Senate Democrats issued a press release announcing the release of updated maps. For the first time, the General Assembly explained that the maps were generated using five-year ACS data and "other election data." However, there was no explanation of how the General Assembly used ACS estimates and "other election data" to populate representative and legislative districts. There was also no disclosure of either the estimated populations of the various representative and legislative districts or demographic breakdowns of these districts.

47.     Early Friday morning on May 28, 2021, with only one-hour's notice, House and Senate Democrats scheduled hearings to allow public comment on the updated maps. Constituents and community advocacy organizations complained about the lack of notice and

protested the fact that the General Assembly had neither given the public the underlying methodology used to populate representative and legislative districts nor provided them with time to analyze the underlying data and methodology used to create the maps.

48.     Late that Friday evening, the General Assembly passed House Bill 2777 and Senate Floor Amendment 1 and sent the Enacted Plans to Governor Pritzker for approval.

49.     The Enacted Plans measure total population using five-year ACS estimated data — not P.L. 94-171 actual enumeration data.  The current redistricting plans are therefore not in compliance with the Fourteenth Amendment's one-person, one-vote mandate.

50.     On June 4, 2021, Governor Pritzker signed House Bill 2777 into law.  The public still did not have access to the methodology and data used to populate individual representative and legislative districts.  The General Assembly still has not released the alleged populations of the individual representative and legislative districts.

## V. CAUSES OF ACTION
### First Cause of Action
### (Equal Protection Malapportionment)

51.     Plaintiffs hereby reallege and incorporate by reference the allegations in all of the previous paragraphs.

52.     This case arises under 42 U.S.C. § 1983 and the Fourteenth Amendment, Section 1, to the Constitution of the United States, which provides in pertinent part:  "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

53.     The Equal Protection Clause requires that the representative and legislative districts used to elect members of the General Assembly be substantially equal in population.

*See Reynolds v. Sims*, 377 U.S. 533, 569 (1964) ("We hold that, as a basic constitutional standard, the Equal Protection Clause requires that the seats in both houses of a bicameral state legislature must be apportioned on a population basis.").

54.     The General Assembly enacted representative and legislative plans using five-year ACS data, which provide only population estimates.  The General Assembly did not use P.L. 94-171 data from the 2020 Census, which contains an enumeration of the population.

55.     The General Assembly has failed to comply with its constitutional obligation to enact districts that are sufficiently equipopulous as measured by P.L. 94-171 data.

56.     The Enacted Plans are therefore malapportioned and violate the one-person, one-vote standard.

## REQUEST FOR THREE JUDGE COURT

57.     This action challenges the constitutionality of the apportionment of the General Assembly.  Accordingly, "[a] district court of three judges shall be convened . . . ."  28 U.S.C. § 2284(a).

## ATTORNEY'S FEES

58.     In accordance with 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988(b), Plaintiffs are entitled to recover reasonable attorney's fees, expenses, and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the following relief:

1.  A declaratory judgment that the Enacted Plans violate the Equal Protection Clause of the Fourteenth Amendment;

2.  A preliminary and permanent injunction enjoining Defendants from certifying petitions or conducting future elections for the General Assembly under the Enacted Plans;

3.  An injunction requiring Defendants to draw and establish maps that comply with and comport with the one-person, one-vote principles of the Fourteenth Amendment as measured by P.L. 94-171 data released following the 2020 Census;

4.  Recovery of all costs against Defendants, including reasonable attorney's fees;

5.  Continuing jurisdiction to render any and all further orders that this Court may from time to time deem appropriate; and

6.  Such other and further relief as this Court deems just and proper.


Dated: June 10, 2021                    Respectfully submitted,

                                        */s/Griselda Vega Samuel*

                                        MEXICAN AMERICAN LEGAL
                                        DEFENSE AND EDUCATIONAL
                                        FUND

                                        Griselda Vega Samuel
                                        IL State Bar No. 6284538
                                        Francisco Fernandez del Castillo*
                                        IL State Bar No. 6337137
                                        11 E. Adams, Suite 700
                                        Chicago, IL 60603
                                        Phone: (312) 427-0701
                                        Facsimile: (312) 588-0782
                                        Email: gvegasamuel@maldef.org
                                        Email: ffernandez-delcastillo@maldef.org

                                        Thomas A. Saenz, *pro hac vice pending*
                                        CA State Bar No. 24005046
                                        Ernest Herrera, *pro hac vice pending*
                                        CA State Bar. No. 335032
                                        643 S. Spring St., 11th Fl.
                                        Los Angeles, CA 90014
                                        Telephone: (213) 629-2512
                                        E-mail: tsaenz@maldef.org

ATTORNEYS FOR PLAINTIFFS
*Admission to Northern District of Illinois
 Pending

## CERTIFICATE OF SERVICE

I hereby certify that, on June 10, 2021, a copy of the above Plaintiff's Complaint was filed electronically in compliance with Local Rule 5.9. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing.


/s/ Griselda Vega Samuel
ATTORNEY FOR PLAINTIFFS