# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JULIE CONTRERAS, IRVIN FUENTES, ABRAHAM MARTINEZ, IRENE PADILLA, and ROSE TORRES,<br><br>Plaintiffs,<br><br>v.<br><br>ILLINOIS STATE BOARD OF ELECTIONS, CHARLES W. SCHOLZ, IAN K. LINNABARY, WILLIAM M. MCGUFFAGE, WILLIAM J. CADIGAN, KATHERINE S. O'BRIEN, LAURA K. DONAHUE, CASANDRA B. WATSON, and WILLIAM R. HAINE, in their official capacities as members of the Illinois State Board of Elections; EMANUEL CHRISTOPHER WELCH, in his official capacity as Speaker of the Illinois House of Representatives; the OFFICE OF SPEAKER OF THE ILLINOIS HOUSE OF REPRESENTATIVES, DON HARMON, in his official capacity as President of the Illinois Senate; and the OFFICE OF THE PRESIDENT OF THE ILLINOIS SENATE,<br><br>Defendants. | Case No. 1:21-cv-03139<br><br>Circuit Judge Michael B. Brennan; Chief Judge Jon E. DeGuilio; Judge Robert M. Dow, Jr.<br><br>Three-Judge Panel Pursuant to 28 U.S.C. § 2284(a) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS WELCH, OFFICE OF THE SPEAKER, HARMON, OFFICE OF THE PRESIDENT'S RULE 12(B) <u>MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT</u>**

**INTRODUCTION & BACKGROUND**

Plaintiffs Julie Contreras, Irvin Fuentes, Abraham Martinez, Irene Padilla, and Rose Torres (collectively, "Plaintiffs") filed their original complaint on June 10, 2021. (ECF 1.) Plaintiffs alleged the legislative redistricting plans passed by defendants Emanuel Christopher Welch, in his official capacity as Speaker of the Illinois House of Representatives, and Don Harmon, in his official capacity as President of the Illinois Senate (collectively, "Legislative Defendants"), used unreliable data from the U.S. Census Bureau's American Community Survey ("ACS data")—instead of decennial U.S. Census data—in violation of the U.S. Constitution. (*See* ECF 1.)

Legislative Defendants moved to dismiss the Complaint arguing Plaintiffs lacked standing (ECF 33 at 2), the Supreme Court does not require the use of decennial census data and other courts permit the use of ACS data (*id.* at 5), and Plaintiffs' claims were not ripe (*id.* at 9).

Plaintiffs amended their complaint as a matter of course under Fed. R. Civ. P. 15. (*See* ECF 37.) In the First Amended Complaint, each Plaintiff alleged that under the May 2021 legislative redistricting plan, he or she lived in a malapportioned district under the 2010 decennial census data, and that because of the inherent unreliability of ACS data, on information and belief he or she lived in a malapportioned district using the 2020 decennial census data. (*Id.* ¶¶ 10–14.) Plaintiffs' First Amended Complaint contained detailed allegations describing the unreliability of ACS data and why its use would result in each Plaintiff living in a malapportioned district. (*Id.* ¶¶ 36–44.)

Legislative Defendants moved to dismiss Plaintiffs' First Amended Complaint. (*See* ECF 55). Legislative Defendants abandoned the arguments in their first motion to dismiss that the U.S. Supreme Court does not require the use of decennial data and other courts permit the use of ACS data and that Plaintiffs' claims are not ripe for review. (*Compare* ECF 33 *with* ECF 55.) Instead, Legislative Defendants filed a cursory four-page motion containing the sole argument that

Plaintiffs lack standing to bring their claims because they do not allege the exact mathematical deviation of each Plaintiff's districts.

This argument conflicts with the requirements of Fed. R. Civ. P. 8(a), is unfounded in the case law, and ignores that it would leave Plaintiffs without recourse to challenge the use of unreliable data to create redistricting maps despite a good faith and well-founded allegation that its use results in each Plaintiff personally living in a malapportioned district.

Indeed, the procedural background described above has not proceeded against a static factual backdrop. Since the filing of Plaintiffs' First Amended Complaint, the U.S. Census Bureau has released the 2020 decennial census data.[1] Rather than defend the existing redistricting plan against Plaintiffs' charges of malapportionment, Legislative Defendants have passed new redistricting maps, which have yet to be signed into law by Governor J.B. Pritzker.[2] As a result, this Court has ordered Plaintiffs to file a second amended complaint bringing any issues with the new map to the Court's attention, and to address the effect of that amendment on the instant motion to dismiss. (ECF 72.)

## ARGUMENT

## I. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED STANDING

The three-part test for Article III standing requires that a plaintiff must have: "(1) suffered

---

[1] *See* Press Release, *U.S. Census Bureau Delivers Data for States to Begin Redistricting Efforts*, U.S. CENSUS BUREAU (Aug. 12, 2021), available at https://www.census.gov/newsroom/press-releases/2021/population-changes-nations-diversity.html (last accessed Sep. 8, 2021).

[2] *See* Illinois 102nd General Assembly: First Special Session, "House Resolution 443" (Aug. 21, 2021) available at https://www.ilga.gov/legislation/votehistory/102/house/10200HR0443_08312021_003000.pdf (last accessed Sep. 8, 2021); Illinois 102nd General Assembly: First Special Session, "Senate Resolution No. 3" (Aug. 31, 2021) available at https://www.ilga.gov/legislation/votehistory/102/senate/10201SR0003_08312021_004000D.pdf (last accessed Sept. 8, 2021).

an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Legislative Defendants do not contest that Plaintiffs' injuries would be fairly traceable to Legislative Defendants' conduct or that this Panel can and should redress Plaintiffs' injuries if the legislative districts Plaintiffs reside in are in fact malapportioned. Instead, Legislative Defendants proceed on a standard unfounded in the case law that Plaintiffs must allege the exact mathematical deviation of the districts they reside in to establish a personalized injury in fact. But this novel standard must be rejected because it requires far more than is called for under Supreme Court precedent or the federal rules.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678); *D.B. v. Kopp*, 725 F.3d 681 (7th Cir. 2013). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Kopp* 725 F.3d at 685.

The plausibility standard does not impose a probability requirement at the pleading stage; "it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim will survive a Rule 12(b)(6) motion if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In their First Amended Complaint, Plaintiffs allege, among other things, "[decennial census] data and ACS estimates have different purposes and different collection methodologies" (ECF 37, ¶ 36), "ACS data are not used to determine whether voting districts are equipopulous and comply with the one-person, one-vote constitutional requirement" (*id.* ¶ 37), "ACS data are not available for census blocks, the smallest geographical units used in redistricting" (*id.* ¶ 38), and "[e]ighty percent of the data from the 2015–2019 ACS five-year survey was between two and five years old by Census Day, April 1, 2020" (*id.* ¶ 41). Plaintiffs allege that as a result of these characteristics, ACS data is fundamentally ill-suited for redistricting and results in each Plaintiff living in a malapportioned district. (*Id.* ¶¶ 56–58.) These allegations are enough to create "a reasonable expectation that discovery will reveal evidence" that the districts each Plaintiff resides in are in fact malapportioned, which is all that is required to make a "plausible" claim under Supreme Court precedent and the federal rules. *See Twombly*, 550 U.S. at 555–56. Legislative Defendants' motion to dismiss should be denied.

Nothing in the authority cited by Legislative Defendants articulates the standard they advocate—that Plaintiffs must allege the exact mathematical deviation of the legislative districts they reside in to survive the pleadings stage. Legislative Defendants principally cite *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018), but that is not even a malapportionment case.

Even so, the holding in *Gill* in fact undermines Legislative Defendants' arguments. In *Gill*, the Supreme Court reversed a district court's ruling—*after trial*—that Plaintiffs had an injury sufficient to confer Article III standing. *Id.* But what Legislative Defendants failed to note is that the Court also found that the plaintiffs who alleged the dilution of their vote—like Plaintiffs here—had "pleaded a particularized burden along [the] lines" required by Article III. *Id.* at 1931. The Supreme Court only reversed the district court because "not a single plaintiff sought to prove that

4

he or she lives in a cracked or packed district" at trial. *Id.* This holding in fact supports Plaintiffs' argument that they sufficiently alleged an injury at the pleadings stage to survive a motion to dismiss. The holding cited by Legislative Defendants is directed towards the evidence adduced at trial and has no relevance here.

And at a practical level, Legislative Defendants' argument ignores the fact that the decennial census data was unavailable when Plaintiffs filed their First Amended Complaint. Legislative Defendants would have this Court approve of a legislative "Catch 22" by which the Illinois Legislature can use data known to be unreliable and ill-suited for creating redistricting maps, and then avoid judicial review of those maps by ramming them through before the only objective measure to evaluate them is publicly released. This Court should permit the review of redistricting maps when there are well-pleaded allegations showing that data on which the maps are drawn are ill-suited for redistricting and will result in malapportioned districts.

## II. THE EFFECT OF ANY AMENDED COMPLAINT IS THAT THIS COURT WILL BE REQUIRED TO EVALUATE THE STANDING OF EXISTING PLAINTIFFS AS TO ANY NEW CLAIM, AND THE STANDING OF ANY NEW PLAINTIFFS AS TO ANY NEW OR EXISTING CLAIMS.

This Court directed that the Parties should address the effect of an amended complaint on standing arguments in the briefing on the motions to dismiss. (ECF 72 at 1.) It is clear that this Court would be required to reevaluate any decision finding that Plaintiffs lack standing in the event of a second amended complaint as to any new claims.

"'Article III does not give federal courts the power to order relief to any uninjured plaintiff.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (ROBERTS, C. J., concurring)). "And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724,

5

734 (2008); *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000)). In other words, standing is an individualized inquiry that proceeds on a plaintiff-by-plaintiff and claim-by-claim basis.

As a result, if Plaintiffs file a second amended complaint, this Court will need to evaluate the standing of any existing plaintiff as to any new claim, and any new plaintiff as to any new or existing claim. *See, e.g.*, *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, No. 92 C 6659, 1997 WL 367368, at *3 (N.D. Ill. June 25, 1997) (analyzing standing of plaintiff added through amendment). Plaintiffs' investigation into the new legislative maps is ongoing, and an amendment to the First Amended Complaint may add new parties and claims. Thus, any new standing issues would have to be revisited by the Court in the event of an amended complaint.

However, and for the reasons discussed in Section I, the current Plaintiffs have standing to pursue their current malapportionment claims regardless of whether those claims are brought under the First Amended Complaint or a second amended complaint. And for reasons to be discussed in summary judgment briefing before this court, they are entitled to a remedy now. Indeed, as of the filing of this brief, the redistricting maps recently passed by the Illinois legislature still have not been signed into law by Governor Pritzker, which calls into question whether an amended complaint will even be necessary.

## CONCLUSION

Plaintiffs' First Amended Complaint sufficiently alleges that Plaintiffs have Article III standing to pursue their claims. Plaintiffs allege ACS data is ill-suited to redistricting and resulted in each Plaintiff living in a malapportioned district. These allegations are plausible, and likely to lead to evidence revealing their truth. Legislative Defendants' motion should be denied.

Dated: September 10, 2021

*/s/ Julie Bauer*
Julie A. Bauer (no. 6191271)
Nathan R. Gilbert (no. 6326946)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Tel: (312) 558-8907
Email: JBauer@winston.com
Email: NRGilbert@winston.com

Respectfully submitted,

*/s/ Griselda Vega Samue*
Griselda Vega Samuel (no. 6284538)
Francisco Fernandez del Castillo
(no. 6337137)
MEXICAN AMERICAN LEGAL DEFENSE AND
EDUCATIONAL FUND
11 E. Adams St., Suite 700
Chicago, IL 60603
Telephone: (312) 427-0701
Facsimile: (312) 588-0782
Email: gvegasamuel@maldef.org
Email: ffernandez-delcastillo@maldef.org

Thomas A. Saenz (*pro hac vice*)
CA State Bar No. 24005046
Ernest Herrera (*pro hac vice*)
CA State Bar No. 335032
Denise Hulett
CA State Bar No. 121553
MEXICAN AMERICAN LEGAL DEFENSE AND
EDUCATIONAL FUND
643 S. Spring St., 11th Fl.
Los Angeles, CA 90014
Telephone: (213) 629-2512
Email: tsaenz@maldef.org
Email: eherrera@maldef.org
Email: dhulett@maldef.org

*Attorneys for Plaintiffs*

7

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2021, a copy of the foregoing document was filed electronically in compliance with Local Rule 5.9. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing.

/s/ *Griselda Vega Samuel*
*Attorney for Plaintiffs*